IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PATRICK HARNED,

        Petitioner,

    v.

DON MILLS,

        Respondent.

Civil No. 6:10-cv-00594-PA

OPINION AND ORDER

KRISTINA HELLMAN
Assistant Federal Public Defender
101 SW Main Street
Suite 1700
Portland, OR  97204

ELLEN F. ROSENBLUM
Attorney General
JONATHAN W. DIEHL
Assistant Attorney General
Department of Justice
1162 Court Street NE
Salem OR  97301-4700

PANNER, Judge.

1 - OPINION AND ORDER -

Petitioner brings this habeas corpus action pursuant to 28 U.S.C. § 2254. For the reasons that follow, the Petition for Writ of Habeas Corpus (#2) is DENIED.

## BACKGROUND

On February 11, 1999, petitioner strangled a seven-year-old girl to death and buried her body in his basement bedroom. Petitioner was 16 at the time. On February 15, 1999, petitioner was interrogated by two law enforcement officials, Clatsop County Detective Joseph Colistro and F.B.I. Agent Donald McMullen. Petitioner confessed to the crime. Later that day, petitioner was interviewed by Dr. Frank Colistro, a psychologist employed by the District Attorney's Office.[1] Petitioner again confessed.

On February 19, 1999, a Clatsop County grand jury indicted petitioner on three counts of aggravated murder. The trial court appointed attorney Griffith C.S. Healy to represent petitioner, along with a defense team including co-counsel Laura Graser, investigator Peter Moursund, mitigation specialist Denise Johnson, psychologists Drs. Bolstad and Sack, and therapist Judy Bouton. The trial court subsequently appointed attorney Ralph Monson as special counsel for petitioner for an aid and assist hearing.

---

[1]Detective Colistro and Dr. Colistro are distantly related, but had not met until they appeared at a hearing on petitioner's motion to suppress his statements.

2 - OPINION AND ORDER -

Prior to trial, counsel moved that petitioner be tried as a juvenile, but the trial court denied that motion. Counsel also moved to suppress petitioner's statements to the two law enforcement officers and to the state's psychologist. After an extensive suppression hearing, the trial court denied the motion to suppress.

Petitioner waived a jury trial, and the case was tried to the court. Trial counsel raised affirmative defenses of mental disease or defect, diminished capacity, and lack of intent. Counsel also attempted to assert a defense of extreme emotional disturbance. The trial judge struck the defense because under Oregon law extreme emotional distress is not a defense to aggravated murder.

After a lengthy trial, the judge found petitioner guilty of two counts of aggravated murder.[2] The trial judge sentenced petitioner to life without the possibility of parole.

Petitioner filed a direct appeal. The Oregon Court of Appeals affirmed without opinion, and the Oregon Supreme Court denied review. *State v. Harned*, 194 Or. App. 726, 99 P.3d 1237, *rev. denied*, 337 Or. 616, 103 P.3d 639 (2004).

Petitioner then filed a petition for state post-conviction relief ("PCR"). Following an evidentiary hearing, the PCR trial

---

[2]The court dismissed the third count on the state's motion.

judge denied relief.  On appeal, the Oregon Court of Appeals affirmed without opinion, and the Oregon Supreme Court denied review.  *Harned v. Hill*, 229 Or. App. 740, 213 P.3d 875, *rev. denied*, 347 Or. 258, 218 P.3d 540 (2009).

On November 25, 2009, Magistrate Judge Paul Papak appointed counsel to represent petitioner in a federal habeas corpus action. On May 24, 2010, petitioner filed his Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254.  In it, he alleges five claims for relief:

**First Claim for Relief:  Violations of the Fifth Amendment to the United States Constitution Miranda/Involuntary Statements**
[Petitioner] pleads on information, belief, and/or personal knowledge that his convictions were obtained in violation of the Fifth Amendment to the United States Constitution when the trial court allowed the introduction of [petitioner's] statements, despite the fact that (1) [petitioner] did not make a valid waiver of his *Miranda* rights; (2) [petitioner's] statements were involuntary and were the product of police overreaching and promises of leniency; (3) [petitioner's] statements to the psychologist were tainted by the illegality of the initial statements; and (4) [petitioner's] statements to the psychologist were themselves involuntary.

**Second Claim for Relief:  Violation of the Sixth, Eighth, Fourteenth Amendments to the United States Constitution**
**Deprivation of the Right to Present a Defense, Compulsory Process, and Equal Protection**
[Petitioner] pleads on information, belief, and/or personal knowledge that his convictions were obtained in violation of the Sixth, Eighth, and Fourteenth Amendments to the United States Constitution when the trial court granted the state's motion to strike the defense of extreme emotional disturbance set forth in

Or. Rev. Stat. § 163.135(1) because the Oregon Supreme
Court's limitation on the extreme emotional disturbance
in *State v. Moore*, 927 P.2d 1073 (1996),
unconstitutionally prevented [petitioner] from
presenting available evidence to negate the mental state
of aggravated murder.

**Third Claim for Relief:  Violation of the Fourteenth
Amendment to the United States Constitution
Violation of Due Process**
     [Petitioner] pleads on information, belief, and/or
personal knowledge that his convictions were obtained in
violation of the Fourteenth Amendment to the United
States Constitution when the state failed to hold a
remand hearing or require some kind of judicial
scrutiny, before [petitioner], a juvenile, was tried for
aggravated murder as an adult.

**Fourth Claim for Relief:  Violation of the Eighth
Amendment to the United States Constitution
Cruel and Unusual Punishment**
     [Petitioner] pleads on information, belief, and/or
personal knowledge that his sentence was imposed in
violation of the Eighth Amendment to the United States
Constitution because it is cruel and unusual punishment
to sentence a juvenile with limited mental functioning
and significant mental illness to life imprisonment
without the possibility of parole.

**Fifth Claim for Relief:  Violation of the Sixth
Amendment to the United States Constitution
Ineffective Assistance of Counsel**
     [Petitioner] pleads on information, belief, and/or
personal knowledge that he did not receive effective
assistance of trial counsel as guaranteed by the Sixth
Amendment to the United States Constitution when trial
counsel failed to investigate, prepare, and present the
defenses of diminished capacity/partial responsibility
under Or. Rev. Stat. § 161.300 and voluntary
intoxication under Or. Rev. Stat. § 161.125.

Respondent argues petitioner waived the claims alleged in

Grounds Two and Three because he failed to address them in his

brief in support of Petition.  Respondent argues the Oregon state

courts properly found against petitioner on all the remaining claims, and those findings are entitled to deference under 28 U.S.C. §§ 2254(d) and (e)(1).

## LEGAL STANDARDS

An application for a writ of habeas corpus shall not be granted unless the adjudication on the merits in State court was:

> (1) contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). In *Williams v. Taylor*, 529 U.S. 362, 386-389 (2000), the Supreme Court construed this provision as requiring federal habeas courts to be highly deferential to the state court decisions under review. In *Cullen v. Pinholster*, 131 S.Ct. 1388, 1398-1402 (2011), the Court reiterated the highly deferential nature of federal habeas review, and limited federal review "to the record that was before the state court that adjudicated the claim on the merits."

A state court decision is "contrary to" clearly established federal law if it is "in conflict with," "opposite to," or "diametrically different from" Supreme Court precedent. *Williams*, 529 U.S. at 388. An "unreasonable application" of clearly established Supreme Court law occurs when "the state court identifies the correct governing legal principle . . . but

6 - OPINION AND ORDER -

unreasonably applies that principle to the facts of the . . . case." *Lambert v. Blodgett*, 393 F.3d 943, 974 (9th Cir. 2004) (citing *Williams*, 529 U.S. at 413), *cert. denied*, 546 U.S. 963 (2005). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 131 S.Ct. 770, 786 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

A habeas petition may also obtain relief if the state courts' decision was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). Federal courts must presume the correctness of the state court's factual findings, but a habeas petitioner may rebut the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Winzer v. Hall*, 494 F.3d 1192, 1196 (9th Cir. 2007).

The last reasoned decision by the state court is the basis for review by the federal court. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803-04 (1991); *Franklin v. Johnson*, 290 F.3d 1223, 1233 n. 3 (9th Cir. 2002).

## DISCUSSION

### I.   Claims Not Addressed in Petitioner's Brief in Support of Petition for Writ of Habeas Corpus

A petitioner seeking federal habeas relief bears the burden of showing the court he is entitled to relief. *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002); *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004), *cert. dismissed* 545 U.S. 1165 (2005). Pursuant to 28 U.S.C. § 2248, "[t]he allegations of a return to the writ of habeas corpus or of an answer to an order to show cause in a habeas corpus proceeding, if not traversed, shall be accepted as true except to the extent that the judge finds from the evidence that they are not true."

The Court has reviewed the record and finds petitioner has not met his burden of showing he is entitled to relief on the claims that are not argued in his memorandum.  The Court's review of the state proceedings confirms that the state court decisions on the claims alleged in Grounds Two and Three were not contrary to or an unreasonable application of clearly established federal law as determined by the Supreme Court.  Accordingly, petitioner is not entitled to habeas corpus relief on his claim that his constitutional rights were violated by the trial court's decision to strike the defense of extreme emotional distress or the trial court's failure to hold a remand hearing before petitioner was tried as an adult.

## II. Ground One - Suppression of Petitioner's Statements

In *Miranda v. Arizona*, 384 U.S. 436, 444 (1966), the Supreme Court held that, prior to questioning, a suspect be apprised of his constitutional right to remain silent and to consult an attorney. Any waiver of *Miranda* rights must be made voluntarily, knowingly and intelligently. *Moran v. Burbine*, 475 U.S. 412, 421 (1986). To be voluntary, the waiver must have been "the product of a free and deliberate choice rather than intimidation, coercion, or deception." *Id*. To be knowing and intelligent, the waiver must have "been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *Id*. A *Miranda* waiver is only effective if the totality of the circumstances surrounding the interrogation reveal "both an uncoerced choice and the requisite level of comprehension." *Id*.

Petitioner argues he did not make a valid waiver of his *Miranda* rights in the interview with the officers, his statements were involuntary and the product of police overreaching and promises of leniency, his statements to the psychologist were themselves involuntary, and his statements to the psychologist were tainted by the illegality of his initial statements. After a lengthy hearing on the issues, the trial judge rejected petitioner's argument:

> So in summary, as far as the facts are concerned, I do
> believe that [petitioner] was provided a Miranda
> warning.  And I thought maybe that would be an issue
> today but it's not; the evidence is there.  I think he
> has sufficient intelligence to understand the warning.
> I think he specifically knew and would understand that
> he did not have to talk to the police after he was given
> that warning.  I think he knew he was being interviewed
> about [the victim's] disappearance.  I don't think there
> were any threats at all by the two officers or officer
> -- Detective Colistro or Agent McMullen.  I don't think
> he was coerced in any way to waiving his rights.
> Listening to the tape and the interview itself, it was
> really in very friendly tones and almost as if -- it
> could have almost have been at the coffee shop or a
> conversation in somebody's front room.  I think he made
> a willing and voluntary waiver of his rights.  I don't
> think he was promised any lenient treatment at all by
> either McMullen or Detective Colistro.

Transcript, pp. 999-1000.

The trial judge further found that Dr. Colistro provided the
proper *Miranda* warnings and informed petitioner that he was not
there to treat him.   Transcript, pp. 1006-1007.   The court
concluded there was no basis to suppress petitioner's statements
to Dr. Colistro, and therefore the statements to him were
admissible.  *Id*.

Petitioner has failed to rebut, with clear and convincing
evidence, the trial court's factual findings that petitioner was
given his *Miranda* rights and his statements to the officers were
voluntary.   Petitioner also does not rebut the trial court's
finding that the neither officers who conducted the initial
interrogation nor Dr. Colistro deceived petitioner with implied
promises of leniency.   As such, those factual findings are

10 - OPINION AND ORDER -

entitled to a presumption of correctness.  28 U.S.C. § 2254(e)(1).
Further, petitioner has made no showing that the trial court's
denial of the motion to suppress was contrary to, or an
unreasonable application of clearly established federal law.  The
trial judge applied both federal and state law, including *Miranda*,
in analyzing petitioner's arguments.  Accordingly, habeas corpus
relied is not warranted on Ground One.

## III. Ground Four - Life Sentence Without the Possibility of Parole as Cruel and Unusual Punishment

In Ground Four, petitioner alleges the sentence of life
imprisonment without the possibility of parole is cruel and
unusual punishment in violation of his rights under the Eighth
Amendment.  In his brief in support of the Petition, petitioner
does not dispute that the trial judge in his case reasonably
applied the federal law in effect at the time of sentencing.
Petitioner argues, however, that a new substantive rule announced
by the Supreme Court in *Graham v. Florida*, 560 U.S. 48, 130 S.Ct.
2011 (2010) must be applied retroactively and relief granted
thereunder.

The Eighth Amendment prohibition against cruel and unusual
punishment "forbids only extreme sentences that are 'grossly
disproportionate' to the crime."  *Ewing v. California*, 538 U.S.
11, 20 (2003).  Before *Graham*, to determine whether a sentence in
a non-capital case was "grossly disproportionate" to a particular

crime, courts were to begin by comparing the gravity of the
offense and the severity of the sentence.  *Graham*, 130 S.Ct. at
2022 (citing *Harmelin v. Michigan*, 501 U.S. 957, 1005 (1991)).
Then, "in the rare cases in which [this] threshold comparison ...
'leads to an inference of gross disproportionality' the court
should . . . compare the defendant's sentence with the sentences
received by other offenders in the same jurisdiction and with the
sentences imposed for the same crime in other jurisdictions."  *Id.*
If the comparative analysis validates an initial judgment that the
sentence is grossly disproportionate, the sentence is cruel and
unusual.  *Id.*

In *Graham*, instead of employing the balancing test the
Supreme Court applied a categorical test to conclude that the
Eighth Amendment prohibited a sentence of life without the
possibility of parole to the entire class of juvenile offenders
with non-homicide convictions.  *Graham*, 130 U.S. at 2034.  The
Court held the Constitution requires the State to give juvenile
non-homicide offenders "some meaningful opportunity to obtain
release based on demonstrated maturity and rehabilitation."  *Id.*
at 2030.

The Ninth Circuit Court of Appeals recently held *Graham*
applies retroactively on collateral review pursuant to *Teague v.
Lane*, 489 U.S. 288 (1989).  *Moore v. Biter*, 725 F.3d 1184 (9th

Cir. 2013).    As such, if this case were not a § 2254 habeas proceeding, *Graham* would provide the framework for analyzing petitioner's claim.    Because this is a § 2254 habeas proceeding, however, petitioner cannot be granted relief unless he shows the Oregon Supreme Court's rejection of his Eighth Amendment claim was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."    28 U.S.C. § 2254(d)(1).

In *Green v. Fisher*, 132 S.Ct. 38, 44 (2011), the Supreme Court ruled that "§ 2254(d)(1) requires federal courts to focus on what a state court knew and did, and to measure state-court decisions against this Court's precedents *as of the time the state court renders its decision*."    (Emphasis added) (quotations omitted).    The Court said § 2254(d)(1) did not codify *Teague*, and indicated that, when a state prisoner is seeking habeas relief under § 2254 based on a "new rule" of constitutional law, the petitioner must satisfy two separate eligibility requirements: (1) the "retroactivity rules" of *Teague* and its progeny; and (2) the statutory criteria set forth in § 2254(d).    *Martin v. Symmes*, 2013 WL 5653448, *25 (D. Minn., Jan. 7, 2013).

Here, petitioner's conviction became final on April 25, 2005. As such, although *Graham* satisfies the *Teague* retroactivity analysis, it is not applicable to the analysis of the Oregon state

court's decision under § 2254(d)(1).[3]  Instead, the pre-*Graham*

balancing test from *Harmelin* and its progeny applies.[4]  As noted,

petitioner does not dispute that the Oregon courts reasonably

applied the federal law in effect at the time of petitioner's

sentencing.  Petitioner is correct.

A life sentence, without the possibility of parole, is not

grossly disproportionate to the crime of murder.  *See Harmelin*,

501 U.S. at 1009 (term of life imprisonment with no possibility of

parole not disproportionate to first offense crime of possession

---

[3]The § 2254(d)(1) standard did not defeat the petitioner's
claim in *Moore* because although the petitioner's conviction was
final before *Graham*, the California Court of Appeals denied the
petitioner's eighth amendment claim in a state habeas proceeding
after *Graham* was decided. *Moore*, 725 F.3d at 1191.  As such, the
Ninth Circuit found the California Court of Appeals' decision was
contrary to clearly established federal law. *Id*.

[4]Even if *Graham* applied to petitioner's Eighth Amendment
claim, petitioner would not prevail.  First, *Graham* by its terms
applied only to *non-homicide* juvenile offenders.  Second, in *Miller
v. Alabama*, 132 S.Ct. 2455, 2460 (2012), the Supreme Court ruled
that life without parole for juvenile homicide offenders could not
be mandatory, and had to reflect an individualized sentencing
determination.  The Court did not identify a "categorical
constitutional requirement that juveniles sentenced to life
imprisonment for murder be afforded some opportunity for release."
*United States v. Reingold*, --- F.3d ---, 2013 WL 5356875, *7 (2nd
Cir., Sept. 26, 2013).  Because petitioner was not subject to a
mandatory term of life without the possible parole and the trial
judge did engage in an individualized sentencing determination,
petitioner would not prevail under the "new" rule announced in
*Graham*. *See Bell v. Uribe*, 729 F.3d 1052, 1064-65 (9th Cir. 2013)
(*Miller* not applicable because sentencing court could take
mitigating factors into consideration and, thus, the sentence of
life without parole for juvenile homicide offender was not
mandatory).

14 - OPINION AND ORDER -

672 grams of cocaine); *Norris v. Morgan*, 622 F.3d 1276, 1291 (9th Cir. 2010) (life without parole for repeat sex offender justified by gravity of petitioner's recent offense and criminal history), *cert. denied*, 131 S.Ct. 2146 (2011); *Pratcher v. Grounds*, 2013 WL 5443047, *36-37 (N.D. Cal., Sept. 30, 2013) (sentence of 50 years to life for juvenile homicide offender not

grossly disproportionate).    Accordingly,   petitioner   is   not entitled to relief on his cruel and unusual punishment claim.

**IV.  Ground Five - Ineffective Assistance of Counsel**

Under *Strickland v. Washington*, to prevail on a claim of ineffective assistance of counsel, a petitioner must prove: (1) counsel's  performance  fell  below  an  objective  standard  of reasonableness and, (2) there is a reasonable probability that, but  for  counsel's  unprofessional  errors,  the  result  of  the proceeding  would  have  been  different.    466  U.S.  668,  687-88 (1984); *Bell v. Cone*, 535 U.S. 685, 695 (2002); *Williams*, 529 U.S. at 390-91.  "'A reasonable probability is a probability sufficient to undermine confidence in the outcome.'"  *Williams*, 529 U.S. at 391 (quoting *Strickland*, 466 U.S. at 694).  Failure to make the required  showing  on  either  prong  defeats  the  ineffectiveness claim.  *Strickland*, 466 U.S. at 697.

For the performance prong, "[j]udicial scrutiny of counsel's performance must be highly deferential."  *Strickland*, 466 U.S. at

689.  Moreover, "a court must indulge [the] strong presumption
that counsel made all significant decisions in the exercise of
reasonable professional judgment." *Pinholster*, 131 S.Ct. at 1407
(quoting *Strickland*) (internal quotation marks omitted).  The
reasonableness of counsel's conduct must be evaluated in light of
the facts of the case and the circumstances at the time of
representation.  *Strickland*, 466 U.S. at 690.

Finally, a doubly deferential standard of review applies to
federal habeas review of ineffective assistance of counsel claims.
*Knowles v. Mirzayance*, 556 U.S. 111, 129 S.Ct. 1411, 1420 (2009);
*Cheney v. Washington*, 614 F.3d 987, 995 (9th Cir. 2010) (deference
under § 2254 and deference under *Strickland*).  Petitioner must
prove that there is no reasonable argument that counsel satisfied
*Strickland's* deferential standard.  *Premo v. Moore*, 131 S.Ct. 733,
740 (2011); *Harrington*, 131 S.Ct. at 788.

In Ground Five, petitioner alleges his trial counsel was
constitutionally ineffective because he failed to investigate,
prepare, and present a diminished capacity/partial responsibility
defense under Or. Rev. Stat. § 161.300 and involuntary
intoxication under Or. Rev. Stat. § 161.125.  In his Brief in
support, however, petitioner does not argue trial counsel was
ineffective for failing to present the voluntary intoxication
defense.  Instead, he maintains counsel should not have relied

16 - OPINION AND ORDER -

only on an insanity defense and should have investigated,
prepared, and presented the diminished capacity/partial
responsibility defense.

The "partial responsibility" defense is defined at Or. Rev.
Stat. § 161.300, which provides: "Evidence that the actor
suffered from a mental disease or defect is admissible whenever it
is relevant to the issue of whether the actor did or did not have
the intent which is an element of the crime." Petitioner contends
trial counsel failed to present the "partial responsibility"
defense, instead focusing solely on the insanity defense.

The PCR trial judge rejected this claim, explaining as
follows:

> It appears to me that Mr. Healy was a skilled attorney.
> It appears to that [sic] he had substantial experience
> in this field. It appears to me that he was appointed
> as the lead counsel in this matter. Therefore as such
> he carries a responsibility for the tactical decisions
> that he made and so far has [sic] presenting defense
> case and in representing the defendant. . . . Mr. Healy
> decided that his best chance for a success at trial was
> the guilty but for mental disease or defect. He
> presented a substantial case to that effect, he did not
> litigate any other possible defenses. He may have
> talked about them, he did bring them out in one way or
> another, but he didn't pay [h]omage to them as might
> have occurred were those his primary thrust. The fact
> that trial co-counsel disagreed with him as to what was
> available doesn't surprise. The problem is as I see it
> their trying to address some of those issues without
> putting [petitioner] on the stand would have been ·
> extremely problematical and to put [petitioner] on the
> stand is going to be extremely problematical. I find
> specifically that this trial grouping or team was
> substantial at least as far as I'm use to in handling
> and sitting upon criminal homicide. I think their

17 - OPINION AND ORDER -

> investigations were complete. . . .    [Counsel]
> certainly set forth the issues of petitioner's mental
> health.

Resp. Exh. 165, pp. 49-51.    The PCR judge concluded "I find

nothing that was ineffective . . . . I find nothing that has been

raised that would have probably changed the out come." Resp. Exh.

165, p. 51.

The PCR trial judge's decision was not contrary to or an

unreasonable application of *Strickland*.    Trial counsel explained

his tactical choice in pursuing a defense of guilty except for

insanity as follows:

> The mental disease or defect defense was [petitioner's]
> best chance in trial.    The evidence, e.g. body found
> under the floor boards next to his bed, as well as
> [petitioner's] statement made an innocence defense far
> less likely to be fruitful than a mental disease or
> defect defense in my professional judgment.

Resp. Exh. 150, pp. 3-4.    Moreover, while trial counsel focused on

an insanity defense, he did also raise a partial responsibility

defense.    Counsel referenced the Oregon partial responsibility law

in a trial memorandum submitted to the court and in opening

statement.    Evidence submitted in support of the insanity defense

also applied to the partial responsibility defense.    Finally,

counsel argued partial responsibility in closing.    Accordingly,

the PCR trial judge reasonably applied *Strickland*, in finding that

trial counsel was not ineffective in not raising a partial

responsibility defense.   Petitioner is not entitled to habeas relief on his ineffective assistance of counsel claim.[5]

## CONCLUSION

For these reasons, the court DENIES the Petition for Writ of Habeas Corpus and DISMISSES this action.

IT IS SO ORDERED.

DATED this _14_ day of November, 2013.

Owen M. Panner
United States District Judge

---

[5]In his brief in support of his habeas petition, petitioner argues trial counsel was ineffective in several additional respects, including advising petitioner not to testify; failing to adequately communicate with other members of the defense team; failing to obtain petitioner's informed consent before advising him to waive a jury; failing to adequately prepare witnesses; failing to meaningfully move for a change of venue, and failing to file an affidavit of prejudice against the judge. Because these claims were not alleged in the Petition for Writ of Habeas Corpus, the court declines to address them. See Rule 2(c), Rules Governing § 2254 Cases, 28 U.S.C. foll. § 2254; *Greene v. Henry*, 302 F.3d 1067, 1070 n.3 (9th Cir. 2002) (claims not raised in the petition need not be considered).

19 - OPINION AND ORDER -